UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRYAN A. KOLOSICK,

Plaintiff,

v.                                          Case No. 23-C-1050

MARTIN J. O'MALLEY,
Commissioner of Social Security,

Defendant.

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Bryan Kolosick filed this action for judicial review of a decision by the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff asserts that the decision of the administrative law judge (ALJ) is flawed and requires remand. For the reasons that follow, the court concludes that the Commissioner's decision should be affirmed.

## BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on May 5, 2021. He asserted an inability to work due to neuropathy down right leg, arthritis in back, neuropathy in left foot, two spinal laminectomies, and spinal fusion. R. 248. After his application was denied initially and on reconsideration, Plaintiff requested a hearing before an ALJ. ALJ Margaret O'Grady conducted a hearing on December 5, 2022. Plaintiff, who was represented by counsel, and a vocational expert (VE) testified. R. 58–102.

At the time of the hearing, Plaintiff was 49 years old and lived with his wife and nineteen-year-old daughter in Waukesha, Wisconsin. R. 62. Plaintiff was a high school graduate and

worked for almost 20 years as a pressman in a printing company for Brown County Publishing. R. 63. At the job, he stood for 12-hour shifts running the press and lifted up to 100 pounds. R. 64. He stopped working there after he suffered an injury at work, which resulted in pinched discs on his L4-L5 and L5-S1. R. 64, 71. Plaintiff did not work between 2013 and 2021. He testified that he attempted to work for one day in February 2021 stocking shelves in the frozen department, but he had so much back pain he could not work four hours. R. 63.

Plaintiff stated that he has pain in his upper and lower back and has neuropathy down his right leg into his foot. R. 66–67. He testified that the pain and neuropathy last all day and never go away. Plaintiff also stated that he gets numbness and tingling in both of his hands. R. 68. He indicated that he took metformin and insulin twice a day for his diabetes; lisinopril, pravastatin, and Zoloft for his depression; and a muscle relaxer for back spasms. R. 65. As to side effects, Plaintiff testified that he gets lightheaded and tired when he takes the muscle relaxer. R. 66. He stated that he used to take Advil but has not taken it in a month because it does not relieve his pain. R. 67. Plaintiff reported using a cane every day due to lower back pain, lack of balance, and neuropathy in his leg. R. 71.

Plaintiff testified that he takes care of his personal needs, such as bathing and dressing himself and that he cooks simple meals. R. 68. He stated that he does the dishes, but on a limited basis, and that his wife does the laundry the majority of the time as well as the housekeeping. R. 69. Plaintiff reads, plays games on his phone once in a while, plays board games and video games, works on puzzles, and has the television on when he tries falling asleep at night. R. 69–70. He also goes to the grocery store and drives when he needs to. *Id.*

In an eighteen-page decision dated February 16, 2023, the ALJ concluded Plaintiff was not disabled. R. 36–53. Following the Agency's sequential evaluation process, the ALJ found that

Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of August 15, 2013, through his date last insured of December 31, 2018. R. 38. Next, the ALJ determined that Plaintiff had the following severe impairments: lumbar degenerative disc disease, lumbar radiculopathy, distal sensory neuropathy, meralgia paresthetica, sciatica, diabetes, and obesity. R. 39. The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 40.

After reviewing the record, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except "he could perform occasional stooping, crouching, kneeling, crawling, balancing, and climbing of ramps and stairs; no climbing of ropes, ladders, or scaffolds; and could not work at unprotected heights or with dangerous machinery and hazards." R. 41–42. The ALJ found that Plaintiff was unable to perform any past relevant work as a first press operator. R. 51. But considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including sorter, inspector, and table worker. R. 51–52. Based on these findings, the ALJ concluded that Plaintiff was not under a disability at any time from August 15, 2023, through December 31, 2018. R. 53. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner.

## LEGAL STANDARD

The Commissioner's final decision will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010);

*Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)).  Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn.  *Jelinek*, 662 F.3d at 811 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)).  The ALJ "must build an accurate and logical bridge from the evidence to his conclusion[s]." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citation omitted); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)).

The ALJ is also expected to follow the Social Security Administration's rulings and regulations.  Failure to do so, unless the error is harmless, requires reversal.  *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006).  In reviewing the entire record, the court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998).  Finally, judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

Plaintiff argues that the ALJ's RFC assessment was not supported by substantial evidence.  An RFC is an assessment describing the extent to which an individual's impairments may cause physical or mental limitations or restrictions that could affect his ability to work.  SSR 96-8p, 1996 WL 374184, at *2.  The RFC represents "the maximum a person can do—despite his limitations—

4

on a 'regular and continuing basis,' which means roughly eight hours a day for five days a week." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting SSR 96-8p). In forming the RFC, an ALJ must review all of the relevant evidence in the record and "consider all limitations that arise from medically determinable impairments." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). An RFC assessment "is a matter for the ALJ alone" to decide. *Id.* at 808. The ALJ must consider the "entire record" and "is not required to rely entirely on a particular physician's opinion." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). In assessing a claimant's RFC, the ALJ has the responsibility for resolving any conflicts between the medical and nonmedical evidence. *Pepper*, 712 F.3d at 363. The court's task "is to determine whether substantial evidence supports the ALJ's RFC conclusion." *Id.* In formulating the RFC, the ALJ considered the evidence in the record, including Plaintiff's medical and treatment record, the medical opinions, Plaintiff's testimony and subjective reports of his symptoms, and his activities of daily living. R. 41–50.

Plaintiff argues that the ALJ's RFC assessment did not account for his statements of limitations in handling and fingering, neuropathy, use of a cane, and the ability to sustain full-time work. As an initial matter, Plaintiff has not developed any argument establishing that the ALJ erred in omitting manipulative limitations from the RFC and has therefore waived any such argument. *See Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018) (citation omitted). As to his neuropathy and his use of a cane, the ALJ acknowledged that Plaintiff mentioned using a cane every day because of lower back pain, lack of balance, and neuropathy and that some examinations noted that Plaintiff used a cane. R. 43–44, 48, 50. But nothing in the evidence supports that Plaintiff was required to use a cane. In addition, the ALJ considered the medical record and Plaintiff's statements regarding his neuropathy and other symptoms when formulating the RFC.

5

Plaintiff has not identified any additional limitations or restrictions upon his functional capacity created by his neuropathy. Plaintiff also argues that his required frequent medical treatment would have resulted in time off work. To the extent Plaintiff claims his treatment would have resulted in absenteeism, Plaintiff has not pointed to "anything in the record to suggest that his appointments would require him to miss a full day of work or that he could not schedule his appointments outside of working hours." *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018). In short, the ALJ did not err by not including additional limitations regarding handling and fingering, neuropathy, use of a cane, and absenteeism.

Plaintiff asserts that the ALJ mischaracterized and inappropriately minimized his treatment for his back pain as "conservative." But the ALJ indicated that Plaintiff's treatment was "both conservative and more invasive in nature." R. 43. The ALJ noted that his conservate treatment modalities consisted of oral pain medication, physical therapy, and some injections. *Id.* She also explained that Plaintiff's more invasive treatment involved three back surgeries, which consisted of an L4-L5, L5-S1 hemilaminectomy performed on December 17, 2013; a repeat laminectomy procedure on April 25, 2014; and an L3-L4 laminectomy and L4-L5, L5-S1 fusion on June 15, 2016. *Id.* The ALJ noted that, after June 2016, Plaintiff did not undergo any further surgical treatment through the date last insured, or even into the present. R. 44. She did observe, however, that Plaintiff's pain-related treatment was "conservative," or non-invasive, and largely involved physical therapy. *Id.* The ALJ did not err in referring to Plaintiff's physical therapy treatment as conservative.

Plaintiff also contends that the ALJ failed to properly evaluate his treatment in accordance with SSR 16-3p, which requires that an ALJ consider why an individual "may receive period treatment or evaluation for refills of medications because his or her symptoms have reached a

6

plateau." Plaintiff was discharged from physical therapy in April 2017 "due to plateau in strength and pain levels." R. 644. Although the ALJ observed that there was minimal treatment related to Plaintiff's back after his physical therapy ended, R. 45, she did not note the lack of treatment in concluding that Plaintiff was not disabled. Instead, she concluded that the objective medical record overall did not support the alleged severity of Plaintiff's impairments.

Plaintiff further asserts that the ALJ mischaracterized the findings of the May 2017 Functional Capacity Evaluation (FCE) conducted by Physical Therapist Chrissy Sena. Plaintiff asserts that the ALJ erred in concluding that the FCE supported a finding that Plaintiff could perform light work. But Ms. Sena, not the ALJ, concluded that the restrictions noted during evaluation supported that Plaintiff can perform at a "LIGHT physical demand level full time, 8 hours a day, 5 days a week." R. 670. The ALJ did not rely on Ms. Sena's conclusions to find that Plaintiff could perform light work, as Plaintiff suggests. Instead, the ALJ limited Plaintiff to sedentary work with certain functional restrictions. *See* R. 41–42.

Plaintiff argues that the ALJ cherry-picked the record by only citing to benign findings and overlooked other evidence in the record that supported his claims. Although an ALJ need not mention every piece of evidence in the record, she "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citation omitted). In this case, the ALJ discussed the medical evidence in detail. She acknowledged the evidence indicating that Plaintiff had certain functional limitations but that, overall, the objective medical record as a whole did not support the alleged severity of Plaintiff's impairments. The fact that Plaintiff is able to point to various treatment notes in the record not referenced by the ALJ does not equate to cherry-picking. The explicit weighing of evidence is "precisely within the purview of the ALJ—and it is not [the

7

court's] place to reweigh evidence, even where reasonable minds might disagree about the outcome." *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023) (citing *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021)).

Finally, Plaintiff asserts that the ALJ erred in evaluating imaging evidence that was not reviewed by the state agency physicians but showed a "possible new severe impairment: Multilevel flowing ventrolateral endplate osteophytosis suggesting diffuse idiopathic skeletal hyperostosis." Pl.'s Br. at 24, Dkt. No. 14. He contends that the ALJ was not qualified to interpret the imaging studies and that the ALJ should have submitted the imaging studies to the state agency physicians for evaluation. *See Moreno v. Berryhill*, 882 F.3d 722, 728–29 (7th Cir. 2018). In this case, the ALJ did not improperly interpret the imaging studies; she simply noted that there was imaging related to the cervical, lumbar, and thoracic spines after the June 2016 fusion surgery that showed some abnormalities, but that the tests were performed a few years after Plaintiff's date last insured. The ALJ was not required to submit imaging studies that were performed several years after Plaintiff's date last insured to the state agency physicians for review.

The ALJ followed the regulations governing the assessment of Plaintiff's RFC and provided an adequate explanation for her findings. Her conclusion is not patently wrong and does not necessitate remand.

## CONCLUSION

For these reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** at Green Bay, Wisconsin this 5th day of September, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

8